[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 5, 2007
THOMAS K. KAHN
CLERK

No. 06-14345
Non-Argument Calendar

_____

D. C. Docket No. 05-60180-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH E. POTTS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 5, 2007)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

After trial, Kenneth Potts appeals his 27-month sentence for conspiracy to

commit mail fraud, in violation of 18 U.S.C. §§ 371 and 1341. After review, we affirm.

## I. BACKGROUND

### A. Offense Conduct

Potts and two co-defendants, Freddie J. Newton and Travis Robinson, were charged in a multi-count indictment alleging a fraud scheme in which the defendants purchased cellular phones and service using counterfeit checks and then resold them for cash on the street. Potts was charged with seven counts of mail fraud and one count of conspiracy to commit mail fraud. Potts's co-defendants pled guilty. Newton received a 16-month sentence. Robinson received an 18-month sentence.

Potts pled not guilty and proceeded to trial. A jury convicted Potts on the conspiracy count, but acquitted him on the substantive mail fraud counts.

According to the Presentence Investigation Report ("PSI"), in April 2003, Potts's co-defendants, Newton and Robinson, formed Federal Auditing Express ostensibly to provide credit rebuilding services for people with poor credit.[1] However, Robinson and Newton used the company to purchase, with counterfeit checks, cellular phones and service and then resell them on the street for $200 each

[1]Newton was the president of Federal Auditing Express, and Robinson was the chief executive officer.

2

plus a monthly usage fee. Newton and Robinson began the scheme by ordering 50 phones from Nextel and mailing counterfeit checks to Nextel as payment.

Newton and Robinson then approached Potts to sell him a phone and told him of the scheme. Potts offered to help with sales and to organize the operation and later joined the operation. Potts became the vice president of operations.

Two weeks after Potts joined Federal Auditing Express, the defendants ordered and sold another 50 phones from Nextel. Three weeks later, the defendants ordered a third set of 50 phones from Nextel, for a total of 150 Nextel phones. After four months, Nextel discontinued service, and defendants ordered phones from T-Mobile. As each cell phone company discontinued service, defendants ordered phones from another cell phone company.

The three co-defendants divided the profits among themselves. During the course of the entire scheme, these phones were ordered and paid for with counterfeit checks: 150 phones from Nextel for a loss of $82,433.29, 150 phones from T-Mobile for a loss of $26,183.31, between 200 and 250 phones from Verizon for a loss of $126,128.76, and 50 phones from Sprint PCS for a loss of $14,345.57. In addition, Newton leased office furniture for Federal Auditing Express from Office Suites Plus and paid $30,503.00 using a counterfeit check.

The total loss attributable to the scheme was $279,593.93.[2] The scheme continued for four months until Potts and Robinson had a disagreement with Newton and left the company.

**B.    PSI**

The PSI recommended a total offense level of 18, pursuant to U.S.S.G. § 2B1.1(b)(1)(G), because the loss was more than $200,000 but less than $400,000. With Potts's criminal history category I, the PSI calculated an advisory guidelines range of 27 to 33 months. The PSI also stated that Potts was fully informed of the scheme and that neither an aggravating nor a mitigating role adjustment was warranted.

Potts filed a written objection limited to the factual allegations regarding the offense conduct. Specifically, Potts's objection did not dispute that he worked at Federal Auditing Express, that the phone orders were made at the times noted in the PSI, that he participated in phone orders, that Newton and Robinson were involved in the fraud scheme in issue or that the actual losses in issue occurred in the amounts shown in the PSI. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (explaining that facts in the PSI that are not disputed by the defendant are deemed admitted). Rather, Potts's objection maintained his

---

[2]Potts did not object to the PSI's calculation of the amount of loss during the entire conspiracy.

4

innocence, claimed that he was unaware of the fraud scheme during the time he worked at Federal Auditing Express and denied that Newton and Robinson told him of the scheme. Potts did not object to the PSI's guidelines calculations in paragraphs 11-28 and 52-61.

## C.    Sentencing Hearing

At the sentencing hearing, the district court overruled Potts's objections to the factual allegations in the PSI, noting that they attacked Potts's conviction and did not affect the guidelines calculations. The district court found that the advisory guidelines calculations resulted in a range of 27 to 33 months and asked Potts what sentence it should impose.

Potts's counsel argued for a probation sentence, emphasizing: (1) Potts's service in the Gulf War; (2) his two young children; (3) his involvement in the community and his church; (4) character letters; (5) his lack of a criminal history; and (6) his co-defendants' 18- and 16-month sentences.

Then Potts's counsel pointed out that Potts was with Federal Auditing Express for only two months. In response, the district court stated, "Yeah. I'm kind of surprised, but you didn't seek a minor role adjustment." Potts's counsel stated that he "thought it was pretty obvious that it was a minor role" and asked the district court for probation.

The district court stated that, "it's a tough argument to ask me to apply the factors without regard to the guidelines in this case, because with a fraud of this size, I don't think one could say rationally that a 27-month sentence is an unreasonable sentence even for a first offender." The district court opined that "maybe there is an argument here that he was a minor participant. He wasn't in on the scheme the entire time and the others do seem to have been more deeply involved," and asked for the government's position.

The government opposed a minor role reduction, noting that although Potts joined the fraud conspiracy after it had been in operation for a month, the conspiracy lasted four or five months. The government stressed that Potts took "major steps" in the conspiracy, including becoming the "point of contact" with the telephone companies, meeting phone company representatives and lying to them about the number of employees at Federal Auditing Express and signing contracts. In reply, Potts argued that he "just ordered telephones," "had nothing to do with the checks" and was not involved in setting up the scheme.

Potts again emphasized his co-defendants' 16- and 18-month sentences. The government responded that the co-defendants had pled guilty and had received reductions for acceptance of responsibility.

Potts's counsel also argued that the fraud scheme was set up and started by

Potts' co-defendants before Potts joined the conspiracy and that thus Potts was not responsible for the entire amount of the loss. The government responded that Potts became involved in the scheme after the first set of phones was ordered, which the PSI shows was the first 50-phone Nextel order. Potts did not object to the accuracy of the government's representation.

The district court then heard from Potts and his wife. The district court found that Potts's case was "serious" and involved a "big loss," and that a 27-month sentence was not unreasonable. The district court noted the need to deter criminal conduct. The district court concluded that, although Potts had no prior criminal record, it could not say "that the factors that favor a more lenient sentence in this case outweigh the factors that favor a guideline sentence." Stating that it had considered the statements of the parties, the PSI, the advisory guidelines calculations and the statutory factors, the district court imposed a 27-month sentence. When the district court asked for objections, Potts made none.

This appeal followed.

## II. DISCUSSION

On appeal, Potts argues that he should have received a minor role reduction pursuant to U.S.S.G. § 3B1.2.

Under § 3B1.2, if a defendant was a minor participant in the criminal

activity, then the offense level is decreased by two levels. U.S.S.G. § 3B1.2(b). A minor participant is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. A defendant who seeks an adjustment under § 3B1.2 bears the burden of proving his mitigated role in the offense by a preponderance of the evidence. United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999). When determining the defendant's role in the offense, the district court's consideration is guided by two principles: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense. Id. at 940-45.

Citing De Varon, Potts argues that he is entitled to a minor role reduction because he was held responsible for the full amount of loss resulting from the conspiracy, including losses incurred before he joined the conspiracy. Under De Varon, in determining Potts's role, we look to the conduct on which his offense level is founded. Here, Potts's offense level of 18 is founded on the total conspiracy in this case, which involved 550 to 600 phones bought with counterfeit checks at a total estimated loss of $279,593.93.

The problem for Potts is the evidence showed that he joined the conspiracy

after the first Nextel order of 50 phones and that this Nextel order represents only a minor part (approximately $27,477.76[3]) of the total $279,593.93 loss. Thus, Potts participated in at least ninety percent of the fraudulent phone orders and ninety percent of the loss. In other words, Potts's actual conduct and relevant conduct were not materially different. Moreover, the loss of $27,477.76 from the first Nextel order did not affect Potts's offense level calculation. Under § 2B1.1(b)(1)(G), Potts's total offense level of 18 was based on an amount of loss exceeding $200,000. Even deducting the $27,477.76 loss amount from the total loss of $279,593.93, the loss attributable directly to Potts is $252,116.17. Thus, Potts's total offense level remains the same even if the first Nextel order is deducted from his loss calculation.[4]

Furthermore, Potts's role in the overall conspiracy was anything but minor. Potts was one of three partners in the scheme and shared in the proceeds. As vice

---

[3]The PSI indicated that, in toto, defendants ordered 150 phones from Nextel for a loss of $82,433.29. Thus, one third of Nextel's $82,433.29 in losses – or $27,477.76 – is fairly attributable to the first Nextel order of 50 phones.

[4]For the first time on appeal, Potts argues that the government's representation at sentencing that Potts joined the conspiracy after the first phone order was inconsistent with the evidence presented at trial. The government's representation, however, is consistent with the PSI, which stated in paragraph 5 that the second 50-phone Nextel order was placed by Federal Auditing Express two weeks after Potts was hired. In any event, as the government notes, there was trial evidence to support the government's representation. For example, Jeremy Latimer, the Nextel sales representative assigned to Federal Auditing Express, testified that Newton and Robinson placed the first order of 50 phones, but that around the time of the second order, Newton introduced him to Potts and explained that Potts would be handling the phone orders.

president of operations, Potts was the "contact person" with the phone companies, who placed orders, signed contracts and, when necessary, lied to phone company representatives to keep the scheme going. Potts presented over $100,000 in bad checks while knowing Federal Auditing Express had no bank account. Potts's role, although perhaps different from that of his co-defendants, was no less important to the continued success of the scheme. Even assuming arguendo that Potts was less culpable than his two co-defendants (the only other discernable participants), he was not a minor participant. De Varon, 175 F.3d at 944 ("The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants.").[5]

Because the record amply shows that Potts was more than a minor participant in the conspiracy, the district court did not err, plainly or otherwise, in

_____

[5]Potts complains that the district court failed to rule explicitly on the minor-role-reduction issue. A district court's failure to make an explicit determination does not require remand if the record clearly supports the district court's implicit determination. See United States v. Villarino, 930 F.2d 1527, 1528-29 (11th Cir. 1991); see also United States v. Taylor, 88 F.3d 938, 944 (11th Cir. 1996).

Here, after entertaining extensive argument from both parties on this issue, the district court concluded that Potts's case was serious and that a 27-month sentence was appropriate. By imposing a sentence at the low end of the advisory guidelines range calculated in the PSI, which clearly did not include a minor role reduction, the district court implicitly denied Potts a minor role reduction. That implicit determination is amply supported by the record. Therefore, remand is not required.

not granting Potts a minor role reduction under § 3B1.2(b).[6]

**AFFIRMED**.

---

[6]Although we ordinarily review for clear error a district court's determination of a defendant's role in the offense, <u>De Varon</u>, 175 F.3d at 937, the government urges us to apply plain error review because Potts did not request a minor role reduction or object to the district court's refusal to give him one. For the reasons discussed above, Potts has failed to show reversible error under either standard of review and thus it is unnecessary to resolve the applicable standard of review.